IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>MONIQUE CLARK | Criminal Action No.<br><br>1:23-CR-307-JPB-CCB |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through the undersigned counsel, files this sentencing memorandum. As explained further below, this Court should sentence Defendant Monique Clark to 33 months of imprisonment. Although this represents a downward variance from the applicable guidelines range, such a sentence best comports with the purposes of federal sentencing as enumerated in the federal sentencing statute, 18 U.S.C. § 3553, and is sufficient, but not greater than necessary, to effectuate those purposes in this case.

## Background

**A.  Procedural History**

On September 26, 2023, a federal grand jury indicted Mr. Clark for depriving the victim pretrial detainee of her right to be free from a law enforcement officer's unreasonable use of force, in violation of 18 U.S.C. § 242.  (Doc. 1.)  On March 26, 2024, Mr. Clark pled guilty to the sole count of the indictment pursuant to a negotiated plea agreement.  (*See* Docs. 21 and 21-1.)

1

### B. Offense Conduct

The presentence investigation report (PSR) accurately recites the details of the charged offense. (*See* PSR ¶¶ 6-35.) In short, at the time of the offense, Mr. Clark was working an overtime shift as a detention officer in the booking area of the North Fulton County Jail in Alpharetta when officers of the Alpharetta Police Department brought victim C.B. to the facility for booking and intake. (*Id.* ¶¶ 7, 10-11.) C.B., who was heavily intoxicated, refused to stand still and face forward long enough for the camera built into the jail's full-body x-ray scanner to capture the photo needed to begin the scanning process. (*Id.* ¶¶ 10-11.) Normal practice under those circumstances would have been to place the uncooperative arrestee into an observation cell to calm down and sober up, and re-attempt scanning later. (*See id.* ¶ 30.) Instead, Mr. Clark attempted to physically force C.B., who was already handcuffed, to face the camera. (*Id.* ¶¶ 11-12.) When C.B. continued to move her face out of the camera's view, Mr. Clark wrapped both of his hands around her neck and began to squeeze down, saying "Hey, I choke folks, so I advise you to cooperate. Hold your face before you lose your breath. The choice is yours." (*Id.* ¶ 12.) A few seconds later, as Mr. Clark continued to strangle her, C.B. lost consciousness and fell to the floor at Mr. Clark's feet. (*Id.*) One of the arresting police officers, witnessing the assault, summoned an ambulance and a police supervisor. (*Id.* ¶ 19.) Fulton County internal affairs detectives arrested Mr. Clark the next day. (*Id.* ¶ 13.)

### C. Guidelines Calculation

Mr. Clark is to be sentenced using the 2023 Guidelines Manual, as amended. (*Id.* ¶ 38.) The PSR correctly notes that although § 2H1.1 is the applicable guideline for this § 242 violation, because the offense involved an aggravated assault, the base offense level is the offense level calculated under § 2A2.2. (*Id.* ¶ 39.) And pursuant to § 2A2.2(a), the base offense level starts at 14 with an enhancement under § 2A2.2(b)(3) for the degree of bodily injury suffered by the victim. (*Id.* ¶ 39(a)-(b).)

Regarding the degree of bodily injury, the PSR suggests applying a 5-level enhancement for "serious bodily injury" because the victim reports being hospitalized for several days and undergoing an MRI. (*Id.* 39(b); *see also id.* ¶¶ 32-33.) But Mr. Clark counters that only a 3-level enhancement is appropriate for "bodily injury" because the victim went to the hospital only out of an abundance of caution pursuant to standard practice. (Doc. 23 at 3.) While the PSR correctly notes that the victim went to the hospital after the incident to have her neck examined (*id.* ¶ 19), the government has been unable to confirm what treatment the victim received and whether she was admitted due to her neck pain, her intoxication, or for other reasons.[1] Accordingly, the government concedes that a 3-level enhancement for "bodily injury" is likely appropriate in this case, resulting in a base offense level of 17.

---

[1] The government repeatedly requested C.B.'s hospital records from attorneys representing her in related civil proceedings. The records were never provided.

To the base offense level, the PSR correctly applies a 6-level enhancement under § 2H1.1(b)(1) (both because Mr. Clark (A) was a public official and (B) committed the offense under color of law) and a 2-level enhancement under § 3A1.3 (because the victim was physically restrained in the course of the offense). (PSR ¶¶ 40-41.) While Mr. Clark argues that the restraint enhancement should not apply because Mr. Clark did not himself restrain her with handcuffs, he acknowledges that the case law may be against him on this particular issue. (Doc. 23 at 4-5.) Indeed, as discussed further below, the consensus of authority interpreting the § 3A1.3 restraint provision establishes that even lawful restraint triggers the enhancement. And the restraint enhancement applies here for at least two reasons. First, the act of holding someone by the neck is itself restraint that may trigger this enhancement. Second, the fact that the victim was in handcuffs triggers the restraint enhancement, and it matters not whether Mr. Clark himself applied the handcuffs or took advantage of this condition when he choked her.

Finally, the PSR correctly applies a 3-level downward adjustment for acceptance of responsibility. (PSR ¶¶ 46-47.) Accordingly, Mr. Clark's proper guidelines calculations are as follows:

- Base offense level under § 2A2.2 (cross referenced from § 2H1.1(a)(1)) = 17
- Enhancement One under § 2H1.1(b)(1)(A) & (B) (defendant was a public official and acting under color of law) = +6
- Enhancement Two under § 3A1.1 (restraint of victim) = +2
- Adjustment under § 3E1.1 (acceptance of responsibility) = -3

- TOTAL OFFENSE LEVEL = 22

And with a total offense level of 22 and a criminal history in category I, Mr. Clark would face an advisory guidelines range of 41-51 months of imprisonment.

But, as explained further below, the government respectfully submits that 33 months of imprisonment (equivalent to a 2-level reduction) is an appropriate sentence in this case notwithstanding Mr. Clark's guidelines.

## Argument and Citation of Authority

**1. A 2-level enhancement applies because the victim was physically restrained in the course of the offense.**

Section 3A1.3 states that "[i]f a victim was physically restrained in the course of the offense, increase by 2 levels." § 3A1.3. Mr. Clark does not contest that the victim was physically restrained; instead, he argues only that *he* did not restrain the victim because another officer had placed her in handcuffs earlier. But Mr. Clark ignores the fact that his chokehold is itself restraint. Furthermore, regarding the handcuffs, it is irrelevant whether Mr. Clark placed them onto the victim or whether he took advantage of an already restrained victim.

Starting with the chokehold, there is no question that a chokehold restricts a person's movement. And when a victim has been restrained, Application Note 2 to § 3A1.3 instructs courts not to apply the restraint enhancement in only two situations: (1) "where the offense guideline specifically incorporates this factor," or (2) "where the unlawful restraint of a victim is an element of the offense itself (e.g., this adjustment does not apply to offenses covered by § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint))." § 3A1.3 comment. n.2. These exceptions

"merely prevent double-counting of physical restraint under section 3A1.3 when a two-level increase for physical restraint already has been taken into account under the base offense or the specific offense characteristic, or when the act of physical restraint is an element of the underlying offense." *United States v. Tholl*, 895 F.2d 1178, 1185 (7th Cir. 1990).

Here, neither § 2H1.1 nor § 2A2.2 specifically incorporates restraint as a factor in the base offense level or a specific offense characteristic. *See United States v. Epley*, 52 F.3d 571, 583 (6th Cir. 1995) (holding that restraint is not incorporated into § 2H1.1). And unlawful restraint of a victim is not an element of a § 242 conviction.[2] *See United States v. Gray*, 692 F.3d 514, 521-22 (6th Cir. 2012) (holding that even though the defendant's use of a sleeper hold was part of his conduct that violated § 242, the restraint enhancement still applied); *United States v. Wilson*, 686 F.3d 868, 871-72 (8th Cir. 2012) (holding that applying the restraint enhancement was not double counting in a § 242 case where the defendant's offense conduct included locking inmates into a specific cell where they would be assaulted); *United States v. Evans*, 85 F.3d 617 (4th Cir. 1996) (unpublished table op.) ("Restraint is not an element of an offense under 18 U.S.C.A. § 242.");

---

[2] As Mr. Clark acknowledged during his guilty plea, the elements of his § 242 violation are: (1) the defendant deprived the victim of a right secured or protected by the Constitution or laws of the United States – i.e., the right not to be deprived of due process of law, which includes the right of a pretrial detainee to be free from a law enforcement officer's unreasonable use of force; (2) the defendant acted under color of law; (3) the defendant acted willfully; and (4) the offense resulted in bodily injury. *See* Eleventh Circuit Criminal Pattern Jury Instruction O8.

*id.* ("The right abridged was the right to be secure from the use of unreasonable force by one acting under color of law.  The same offense could be committed against an unrestrained victim."); *Epley*, 52 F.3d at 583 (holding that § "242 does not contain physical restraint as an element of the offense"); *see also United States v. Townsend*, 521 F. App'x 904, 909-10 (11th Cir. 2013) (unpublished) ("Because the sex trafficking offenses could be accomplished without force, by means such as threats, fraud, and withholding L.F.'s passport, physical restraint was not necessarily intrinsic and an element of the offense itself.").  Here, like in *Epley*, *Gray*, *Wilson*, and *Townsend*, the fact that restraint was an integral part of the offense *conduct* does not mean that unlawful restraint of a victim became an *element* of the offense itself.  Accordingly, Mr. Clark's use of a chokehold during the offense justifies application of the restraint enhancement.

The enhancement also applies because the victim was handcuffed when Mr. Clark choked her.  Application of this enhancement does not require that the defendant be the one who restrained the victim, only that the victim "was physically restrained in the course of the offense."  *See* § 3A1.3.  And multiple courts have held that the enhancement properly applies to offenses under § 242 where the defendant took advantage of initially lawful restraint to perpetrate an unlawful assault.  *See United States v. Carson,* 560 F.3d 566, 588 (6th Cir. 2009) ("To the extent that the district court thought that the lawfulness of the arrest precluded application of § 3A1.3, it committed legal error."); *United States v. Clayton*, 172 F.3d 347, 352–53 (5th Cir. 1999); *United States v. Evans*, 85 F.3d 617 (4th Cir. 1996); *see also United States v. Hatley*, 717 F. App'x 457, 463 (5th Cir. 2018)

(unpublished) ("[T]he physical-restraint enhancement applies even when the victim was lawfully restrained if the perpetrator took advantage of that restraint"). Here, C.B. was unquestionably restrained in handcuffs before, during, and for a time after the offense took place, and Mr. Clark took advantage of that lawful restraint when he applied a chokehold to her. Accordingly, the restraint enhancement applies.

**2. The § 3553(a) factors provide mixed guidance in this case.**

At sentencing, the Court must first correctly calculate the applicable guidelines range, and then it may weigh the § 3553(a) factors in calculating the appropriate sentence. Section 3553(a) requires district courts to consider the following factors in imposing a sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect (A) the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to provide general deterrence; (C) to provide specific deterrence; and (D) to provide the defendant with appropriate rehabilitation options; (3) the kinds of sentences available; (4) the advisory guidelines range; (5) the guidelines' policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. 18 U.S.C. § 3553(a)(1)–(7). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (internal quotation marks omitted). The government addresses each factor in turn:

### A. The Nature and Circumstances of the Offense

Mr. Clark's crime was serious and inexcusable. Without justification, he strangled into unconsciousness a restrained, non-threatening detainee who was in his custody and whose safety and wellbeing he had a statutory, constitutional, and moral duty to ensure. In a moment of apparent frustration, he did something he knew to be a flagrant violation of policy and law. The victim's injuries were significant, and the harms done by the crime extended to the Mr. Clark's law enforcement colleagues, who were, by his actions, placed in the difficult position of being made witnesses to a fellow officer's crime.

To be sure, C.B.'s behavior was challenging. She was heavily intoxicated, uncooperative, and verbally abusive. But she was also nonviolent, physically diminutive, and handcuffed. There were three other officers present to react to any contingency. Mr. Clark was an experienced correctional officer who was trained and expected to handle uncooperative detainees and difficult situations without resort to gratuitous violence. His choice to consciously disregard the constitutional restraints on his authority simply cannot be excused or justified by a society committed to the rule of law.

### B. The History and Characteristics of the Defendant

As far as the government is aware, Mr. Clark's personal history and characteristics are not aggravating. The government has no indication that Mr. Clark was a habitually abusive officer or that this offense was part of a larger pattern of brutality. His disciplinary record consisted of only minor infractions related to tardiness and attendance.

## C. Purposes of Sentencing

### 1. Just Punishment and Respect for Law (Punitive Interest)

Violations of the federal criminal civil rights laws by law enforcement personnel are particularly serious offenses. *United States v. McQueen*, 727 F.3d 1144, 1157 (11th Cir. 2013) (noting that "Sections 241 and 242 'are companion sections designed for the protection of great rights won after the Nation's most critical internal conflict.'" (quoting *United States v. Williams,* 341 U.S. 70, 87 (1951))).

Because a law enforcement officer voluntarily takes an oath to uphold and promote the law, justice demands that, when he violates it, the penalty be sharper than would be imposed upon a member of the general public, who although bound by the law, has not put himself forward to be its guardian. Although assault is always a serious crime, most acts of personal violence are not also betrayals of societal trust. But physical abuse of prisoners and suspects at the hands of officers are. Thus, the sentence imposed must reflect the additional harm that betrayal effects on the fabric of a society committed to principles of individual rights and ordered liberty.

### 2. Specific and General Deterrence

There is a particularly strong need for general deterrence in law enforcement excessive force cases, arising from the unfortunate fact that police abuse typically goes undetected and unpunished. Corrections officers occupy positions that "provide the opportunity to commit a difficult-to-detect wrong." *United States v. Cui*, 106 F.3d 409 (9th Cir. 1997) (unpublished table op.) (*quoting United States v.*

10

*Hill*, 915 F.2d 502, 506 (9th Cir. 1990), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010)). In the rare instance that wrongdoing is ferreted out, the interest in general deterrence requires that a strong message be sent to other would-be violators. *See, e.g.*, *McQueen*, 727 F.3d at 1158-59 ("The ability to unearth these crimes by law enforcement . . . is particularly difficult, and, as we see it, the extraordinarily lenient sentences in this case sap the goal of general deterrence."); *United States v. Hooper*, 566 F. App'x 771, 773 (11th Cir. 2014) (unpublished) (declaring that the need for "general deterrence is especially compelling in the context of officials abusing their power").

However, there does not appear to be any strong need for specific deterrence in this case. It will almost certainly be impossible for Mr. Clark, as a convicted felon, to regain employment in corrections, and there is accordingly no foreseeable danger that he will reoffend.

### 3. Public Safety (Incapacitation)

The public interest in incapacitating Mr. Clark is also minimal. The government has no information to suggest that Mr. Clark is a generally violent person, or that, outside the context of his former employment, he poses any danger to society or to specific individuals. His permanent exclusion from positions of legal authority is sufficient to achieve the public safety interest of prosecution and sentencing.

### 4. Rehabilitation

The government has no reason to believe that Mr. Clark requires treatment for substance abuse or chronic mental illness, although the presentence report

certainly indicates that he would benefit from counseling and/or psychological support. As he will need to find new employment after serving any sentence, he would doubtless also benefit from vocational skills training and continuing education. Finally, his sentence should also take into account the need for continuity of care with respect to his medical needs.

### 3. Ultimately, a sentence of 33 months' imprisonment is appropriate in this case.

Excessive force offenses are all serious, but like other violent crimes, they range in severity. At the one end are impulsive, momentary assaults – single gratuitous blows that injure constitutional principles as much as or more than they physically damage their victims. At the other end are prolonged, premeditated, horrific beatings, often involving weapons, that can and do cause extreme injuries. *See, e.g., Koon v. United States*, 518 U.S. 81, 85-87 (1996).

Likewise, excessive force offenders vary in culpability, especially in the correctional setting. Some officers with no history of misconduct lash out in especially tense moments, violating inmates' rights by uncharacteristic loss of self-control. And, although rarer, it is an unfortunate fact that there are predatory, sadistic jailors who brutalize as a matter of routine.

Mr. Clark falls somewhere in the middle of the first axis, and closer to the low end of the second. The guidelines rightly punish strangulation more severely than punches and kicks. But the government notes that, had Mr. Clark taken the victim to a back room, thrown her to the ground, and repeatedly struck her with a nightstick, the guideline sentence would likely be identical even though the

actual offense and that hypothetical one are incomparable. If Mr. Clark's actual offense was premeditated, it was only for a matter of seconds; there appears to have been no real planning and no effort to conceal the offense from any witness or from the numerous cameras (including Mr. Clark's own body-worn camera, which he manually activated a few moments before the assault) that were recording the intake area. That suggests impulsivity, not deliberation. And an officer who engaged in this kind of conduct routinely would presumably have had a plan for evading detection and accountability; Mr. Clark evidently had none. Habitually abusive officers also typically have a poor reputation among inmates and a history of complaints, but the government's investigation uncovered neither as to Mr. Clark.

Finally, Mr. Clark's acceptance of responsibility was quick and comprehensive. He pled guilty early in the judicial process and has expressed a degree of personal remorse. Unusually for cases of this type, he does not appear to have attempted to cover up or conceal his actions, or to falsely blame his victim in official paperwork.

As discussed above, the primary sentencing interests at play in this case are punishment and deterrence. A sentence of 33 months – a downward variance equivalent to a 2-level reduction to the total offense level[3] – would appropriately

---

[3] Incidentally, Mr. Clark moved for a 2-level downward departure under § 5K2.20 (Aberrant Behavior). Because this section applies only in "an exceptional case" and Mr. Clark's conduct falls within the "heartland" of typical cases embodied by the applicable guideline, such a downward departure is inappropriate. *See United States v. Orrega*, 363 F.3d 1093, 1097 (11th Cir. 2004).

punish Mr. Clark more severely than either a civilian who escalated a private dispute to violence or an officer who answered an insult with a simple assault on one occasion, but less severely than one who made a considered decision to deal out summary punishment with a nightstick or a Taser. It would likewise send the message to other jailors that even impulsive abuse will carry stiff consequences. Thirty-three months is a significant sentence, particularly for a former correctional officer with Mr. Clark's medical needs. An additional 8 to 18 months or more would not meaningfully increase general deterrence and is not necessary to satisfy the punitive interest under these circumstances. Therefore, a downward variance to 33 months' incarceration is the most appropriate outcome.

Respectfully submitted,

| | |
|---|---|
| RYAN K. BUCHANAN  *United States Attorney* | KRISTEN CLARK  *Assistant Attorney General* |
| /s/ BRET R. HOBSON  *Assistant United States Attorney*  Georgia Bar No. 882520  Bret.Hobson@usdoj.gov | /s/ ALEC WARD  *Trial Attorney*  District of Columbia Bar No. 1781142  Alec.Ward@usdoj.gov |
| /s/ BRENT ALAN GRAY  *Assistant United States Attorney*  Georgia Bar No. 155089 | U.S. Department of Justice  Civil Rights Division, Criminal Section |

---

Nevertheless, the government's recommended variance would achieve the same 2-level reduction Mr. Clark seeks.

14

Brent.Gray@usdoj.gov

600 U.S. Courthouse
75 Ted Turner Drive S.W.
Atlanta, GA 30303

150 M Street NE
Washington, DC 20002

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

>Devin Austin Rafus
>Manubir S. Arora
>Arora Law Firm
>75 West Wieuca Road NE
>Atlanta, GA 30342
>devin@arora-law.com
>manny@arora-law.com
>
>*Attorneys for Defendant Monique Clark*

June 17, 2024

>/s/ BRET R. HOBSON
>BRET R. HOBSON
>*Assistant United States Attorney*